IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DONNA M. LEE                                                              PLAINTIFF

                 v.                 Civil No. 08-3060

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                       DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Donna Lee, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**Procedural Background**

The plaintiff filed her applications for DIB and SSI on June 17, 2004, alleging an onset date of March 19, 2002, due to carpal tunnel syndrome, back pain, coronary artery disease, depression, and anxiety disorder. (Tr. 55-58, 80). Her applications were initially denied and that denial was upheld upon reconsideration. (Tr. 26-45). Plaintiff then made a request for a hearing by an Administrative Law Judge (ALJ). An administrative hearing was held on October 5, 2006. (Tr. 536-559). Plaintiff was present and represented by counsel.

At this time, plaintiff was 43 years of age and possessed a high school education. (Tr. 11, ). She has past relevant work experience as a certified nursing assistant. (Tr. 103-104, 544).

On November 14, 2007, the ALJ found that plaintiff's chronic neck and back pain, left carpal tunnel syndrome, coronary artery disease (status post myocardial infarction and angioplasty with placement of stent), depressive disorder not otherwise specified, panic disorder without agoraphobia, and schizotypal personality disorder were severe, but did not meet or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 14-18). After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity to lift and carry 10 pounds occasionally and less than 10 pounds frequently; sit 6 hours in an 8-hour workday; stand and walk for 2 hours in an 8-hour workday; and, continuously grasp and perform fine manipulations with the non-dominant hand. However, plaintiff could not work above the shoulder level with the non-dominant arm. Further, from a mental standpoint, plaintiff was mildly limited in the ability to interact appropriately with the public, with supervisors, and with co-workers and moderately limited in her ability to respond appropriately to usual work situations and routine work changes. (Tr. 18). With the assistance of a vocational expert, the ALJ found plaintiff could perform work as a check cashier, admitting clerk, and bench assembler. (Tr. 22).

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on August 28, 2008. (Tr. 3-5). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 7, 8).

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir.

2

2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

## Discussion

In the present case, plaintiff filed additional medical evidence with the Appeals Council, which was reviewed and considered prior to the issuance of the Council's determination. When

3

"a claimant files additional medical evidence with a request for review prior to the date of the [Commissioner's] final decision, the Appeals Council MUST consider the additional evidence if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Williams v. Sullivan*, 905 F.2d 214, 215-216 (8th Cir. 1990). However, the timing of the evidence is not dispositive of whether the evidence is material. *Id.* Evidence obtained after an ALJ decision is material if it related to the claimant's condition on or before the date of the ALJ's decision. *Basinger v. Heckler*, 725 F.29 1166, 1169 (8th Cir. 1984).

Once it is clear that the Appeals Council has considered newly submitted evidence, we do not evaluate the Appeals Council's decision to deny review. Instead, our role is limited to deciding whether the administrative law judge's determination is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made. *See, e.g.*, *Nelson v. Sullivan,* 966 F.2d 363, 366 (8th Cir. 1992), and *Browning v. Sullivan,* 958 F.2d 817, 822 (8th Cir.1992). Of necessity, that means we must speculate to some extent on how the administrative law judge would have weighed the newly submitted reports if they had been available for the original hearing. We consider this to be a peculiar task for a reviewing court. *See Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994).

Medical records before the ALJ indicate that plaintiff suffered a myocardial infarction in March 2007. On March 21, 2007, plaintiff was admitted for observation due to complaints of chest pain that radiated into her left arm and neck. (Tr. 428-463). Plaintiff stated that the pain was relieved via Nitroglycerine, but it continued to recur. A chest x-ray was negative and her first two Troponin tests were negative. However, a third Troponin test was found to be elevated,

4

indicating that she had experienced a myocardial infarction (heart attack). Dr. James Rice, a cardiologist, diagnosed plaintiff with non-ST wave elevation myocardial infarction and prescribed Lovenox. The following morning, Dr. James Caesar performed cardiac catheterization with angioplasty and placement of a stent into the left anterior descending artery ("LAD") due to an 80% stenosis in the mid-LAD. She had an ejection fraction rate of 64%. Plaintiff developed a hematoma in the right groin after the catheterization. She was also placed on critical care glycemic protocol due to elevated blood sugars. An ultrasound conducted on March 23, 2007, noted complete thrombosis of the pseudoaneurysm, rising from the right common femoral artery with the neck of the aneurysm still patent. Otherwise, plaintiff was doing well. By March 24, 2007, however, plaintiff showed complete resolution of the hematoma. Plaintiff did well throughout the remainder of her hospital stay without any complaints. Plaintiff was discharged home on March 26, 2007, with a diagnosis of non-ST elevation myocardial infarction, single vessel coronary artery disease of the LAD, status post angioplasty and stent placement, improving groin pseudo aneurysm, and hypertension. She was given prescriptions for Plavix, Toprol XL, Lisinopril, Zocor, and Combivent. Plaintiff was also told to take aspirin; eat a low-fat, low cholesterol, and low-sodium diet; avoid smoking; and, monitor for recurrence of her cardiac symptoms. (Tr. 428-463).

On May 15, 2007, a stress echocardiogram revealed a normal hemodynamic adenosine test with hypotensive response to adenosine and a normal electrocardiographic adenosine test. (Tr. 488). A myocardial perfusion test also revealed a normal size left ventricle, preserved global left ventricular function, no regional wall motion, and a left ventricular ejection fraction of 67%. (Tr. 486).

5

On May 25, 2007, plaintiff was again hospitalized for chest pain. (Tr. 477-485). Initially, she stated that the pain was responsive to Prilosec, but had recently gotten worse. She underwent a left heart catheterization, ventriculogram, coronary angiogram, right femoral angiogram, and angio-seal. The ventriculogram revealed an ejection fraction rate of 60% with no mitral regurgitation. Ultimately, the tests revealed normal coronaries and normal left ventricular systolic function. (Tr. 477). Plaintiff was discharged with directives to continue Zocor, Metoprolol, Lisinopril, Nexium, Plavix, Aspirin, and Albuterol. (Tr. 479).

Additional evidence presented to the Appeals Council indicates that plaintiff sought further treatment for cardiac related symptoms. On May 24, 2007, plaintiff sought emergency treatment for chest pain. (Tr. 521-527). An EKG was normal, as was a chest x-ray. (Tr. 521-527).

On June 9, 2007, plaintiff was treated in the emergency room for chest pain. (Tr. 515-520). An ECG was borderline, showing sinus rhythm with sinus arrhythmia and first degree A-V block. (Tr. 516). A chest x-ray showed poor inspiration but no acute process. (Tr. 520).

On June 9, 2008, plaintiff sought treatment for burning chest pain that was radiated to her right jaw and left arm. (Tr. 493-502). The symptoms had begun a few hours prior, when plaintiff became overheated while hauling water for her horses. She stated that she had taken Nitroglycerine prior to arrival, but it did not help. The doctor also noted that plaintiff had stopped her Plavix due to severe menometrorrhagia. A chest x-ray revealed borderline cardiomegaly. An EKG showed a normal sinus rhythm and no ST elevation or depression. Her blood work was also normal with the exception of elevated glucose and red blood cell levels. Plaintiff's blood pressure was too low to give her Nitroglycerine in the emergency room.

6

Instead, she was titrated with morphine. Dr. Lori Cheney admitted her to the cardiac unit for observation. Plaintiff was noted to be high risk because she had stopped the Plavix with the stent remaining in place. However, there are no records concerning plaintiff's hospital stay. (Tr. 493-502).

Given plaintiff's medical history and the aforementioned evidence submitted to the Appeals Council, we believe that this matter should be remanded to the ALJ for further consideration. The last treatment note dated 2008 indicates that plaintiff was at high risk for additional problems because she had to stop taking the Plavix. What that means is not exactly clear, but it is clear to the undersigned that this additional evidence would have impacted the ALJ's decision.

Further, we note that the RFC assessments contained in the record do not take into consideration plaintiff's cardiac impairment. Plaintiff underwent a functional assessment in 2003, indicating she was capable of performing medium level work with restrictions related to carpal tunnel syndrome in her left upper extremity. In 2004, a non-examining, consultative doctor also concluded she was capable of performing medium level work. However, there is nothing in the record to indicate what limitations, if any, plaintiff's cardiac condition imposed on her ability to perform work-related activities. Again, the last treatment note indicates that plaintiff was at "high risk" due to her inability to continue to take Plavix.

The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v.*

7

*Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). Given the fact that plaintiff's cardiac condition was not considered by any of the doctors completing the RFC assessments in this case and that the record contains no evidence to indicate whether plaintiff's cardiac condition imposed additional restrictions on her ability to perform work-related activities, we can not say that the ALJ's RFC assessment is supported by substantial evidence. An "ALJ must not substitute his opinions for those of the physician." *See Ness v. Sullivan,* 904 F.2d 432, 435 (8th Cir. 1990). Accordingly, we ieremand is necessary to allow the ALJ to obtain a more recent assessment of plaintiff's ability to function in the work place. *See Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004) (ALJ is responsible for determining RFC, and must base determination on medical evidence that addresses ability to function in workplace; ALJ should consider medical records, observations of treating physicians and others, and claimant's own description of her limitations).

**Conclusion**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 2nd day of February 2010.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)